**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

SCENTSATIONAL TECHNOLOGIES, LLC,

*Plaintiff*,

v.

PEPSICO INC., PEPSI-COLA TECHNICAL
OPERATIONS, INC., THE QUAKER OATS
COMPANY, STOKELY-VAN CAMP, INC.,
and TROPICANA PRODUCTS, INC.,

*Defendants*.

Civil Action No. 13-CV-8645-KMK

JURY TRIAL DEMANDED

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS</u>**

Richard B. Harper
Robert L. Maier
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York 10112-4498
Tele:  (212) 408-2500
Fax:  (212) 408-2501

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 3

    I.    Factual Background ................................................................................. 3

    II.    Procedural Background ............................................................................ 5

LEGAL ARGUMENT .............................................................................................................. 7

    I.    Plaintiff Fails to Identify Its Trade Secrets With Sufficient Particularity (All Counts) ............................................................................... 8

        A.  The Court Should Grant Defendants' Motion to Dismiss or Motion for More Definite Statement and Require Plaintiff to Identify Its Alleged Trade Secrets with Sufficient Particularity ............................ 8

        B.  In the Alternative, The Court Should Order Plaintiff to Disclose Its Alleged Trade Secrets With Sufficient Particularity at the Outset of the Discovery Process ......................................................................... 13

    II.    Plaintiff's Claims For Misappropriation of Trade Secrets, Unfair Competition, Unjust Enrichment, and Constructive Trusts Should Be Dismissed Because They Are Duplicative of the Breach of Contract Claims .......................................... 17

        A.  Plaintiff's Claims for Misappropriation of Trade Secrets (Count I) and Unfair Competition (Count VI) Should Be Dismissed Because No Duty Independent of the Confidentiality Agreements Exists ...................... 18

        B.  Plaintiff's Unjust Enrichment Claim (Count VII) Should Be Dismissed Because a Valid and Enforceable Agreement Governs the Subject Matter of the Dispute ......................................................... 21

        C.  Plaintiff's Claim for Constructive Trusts (Count VIII) Should Be Dismissed Because An Adequate Remedy Exists At Law ............................... 22

CONCLUSION .......................................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Apple Records, Inc. v. Capitol Records, Inc.*,
 137 A.D.2d 50 (1st Dep't 1988) ........................................................................................18

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)....................................................................................2, 7, 9, 10

*AutoMed Techs., Inc. v. Eller*,
 160 F. Supp. 2d 915 (N.D. Ill. 2001) ....................................................................13, 16

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)....................................................................................2, 7, 8, 9, 10

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
 70 N.Y.2d 382 (1987) ...............................................................................................18

*Coty, Inc. v. L'Oreal S.A.*,
 No. 08-0903-cv, 2009 WL 835849 (2d Cir. Mar. 31, 2009)....................................21

*Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*,
 148 F. Supp. 2d 1322 (S.D. Fla. 2001) ...............................................................13, 16

*DeRubeis V. Witten Techs., Inc.*,
 244 F.R.D. 676 (N.D. Ga. 2007)................................................................................13

*Document Sec. Sys., Inc. v. Coupons.com, Inc.*,
 No. 11-cv-6528, 2013 WL 1945954 (W.D.N.Y. May 9, 2013)..................................18, 19, 20

*Dorset Indus., Inc. v. Unified Grocers, Inc.*,
 893 F. Supp. 2d 395 (E.D.N.Y. 2012) ......................................................................19

*Dura Global Techs., Inc. v. Magna Donnelly, Corp.*,
 No. 07-cv-10945, 2007 WL 4303294 (E.D. Mich. Dec. 6, 2007) ...........................13

*Engelhard Corp. v. Savin Corp.*,
 505 A.2d 30 (Del. Ch. 1986)...............................................................................14, 16

*Galet v. Carolace Embroidery Co.*,
 97 CIV. 5702 (OLC), 1998 WL 386434 (S.D.N.Y. July 10, 1998)........................17

*Hill v. Best Med. Intern., Inc.*,
 No. 09-1194, 2010 WL 2546023 (W.D. Penn. June 24, 2010) ...............................13

*Ikon Office Solutions, Inc. v. Konica Minolta Bus. Solutions, U.S.A., Inc.*,
 No. 3:08-CV-539-RLV-DCK, 2009 WL 4429156 (W.D.N.C. Nov. 25, 2009) ....................13

*In re First Cent. Fin. Corp.*,
    377 F.3d 209 (2d Cir. 2004)........................................................................23

*Law Debenture v. Maverick Tube Corp.*,
    No. 06 Civ. 14320, 2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008) ..........................................21

*Medafor, Inc. v. Starch Med. Inc.*,
    No. 09-CV-0441 .........................................................................9, 10

*Medinol Ltd. v. Boston Scientific Corp.*,
    346 F. Supp. 2d 575 (S.D.N.Y. 2004)....................................................21

*Medtech Prods. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008)......................................................8

*MSCI Inc. v. Jacob*,
    36 Misc. 3d 211 (Sup. Ct., N.Y. County 2012) .............................................13, 14

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
    921 F. Supp. 2d 94 (S.D.N.Y. 2013)........................................................22

*Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007)....................................................19

*Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*,
    284 Va. 382 (2012) .........................................................................9, 10

*Rovince Intern. Corp. v. Preston*,
    No. CV 13-3527 CAS, 2013 WL 5539430 (C.D. Cal. Oct. 7, 2013) ..................................9, 10

*Savor, Inc. v. FMR Corp.*,
    No. 00C-10-249-JRS, 2001 WL 541484 (Del. Apr. 24, 2001)................................12

*Sit-Up Ltd. v. IAC/InterActiveCorp.*,
    2008 WL 463884 (S.D.N.Y. 2008)........................................................14

*SmithKline Beecham Pharm. Co. v. Merck & Co., Inc.*,
    766 A.2d 442 (Del. 2000) .......................................................................16

*StonCor Grp., Inc. v. Campton*,
    No. C05-1225JLR, 2006 WL 314336 (W.D. Wash. Feb. 7, 2006) ..........................16

*Struthers Scientific & Intern. Corp. v. Gen. Foods Corp.*,
    51 F.R.D. 149 (D. Del. 1970) .......................................................................17

*Synopsys, Inc. v. ATopTech, Inc.*,
    No. C 13-cv-02965, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)....................................11, 12

*Topps Co., Inc. v. Cadbury Stani SAIC,*
　　380 F. Supp. 2d 250 (S.D.N.Y. 2005).................................................................20

*U.S. ex rel. Evergreen Pipeline Constr. v. Merritt Meridian Constr. Corp.,*
　　95 F.3d 153 (2d Cir. 1996)................................................................................18

*Washington v. Kellwood Co.,*
　　No. 05 Civ. 10034, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ........................21

*Xerox Corp. v. Int'l Bus. Machs. Corp.,*
　　64 F.R.D. 367 (S.D.N.Y. 1974) .........................................................................15

## STATUTES

Fed. R. Civ. P. 12(b)(6)...........................................................................................7

## OTHER AUTHORITIES

Brent J. Gurney, Joshua T. Ferrentino and Alexander B. White, *Benefits of Early
　　Discovery in Defending Trade Secret Misappropriation Claims*, 249 N.Y.L.J. 113
　　(June 13, 2013)...........................................................................................14, 15

Casey Mangan and Jeffrey A. Wakolbinger, *On the Importance of Early Identification
　　and Getting Specific*, American Bar Association (March 28, 2014) ......................14

Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in
　　Litigation: Solutions for a Ubiquitous Dispute*, 5 NW. J. TECH. & INTELL. PROP. 68, 99
　　(2006)................................................................................................................16

Eric W. Schweibenz and Lisa M. Mandrusiak, *"Discovering" Trade Secrets: The Devil Is
　　in the Details*, 84 PTCJ 492 (July 20, 2012)..................................................9, 17

Lee Ann Stevenson, *Can You Be More Specific?*, New York Law Journal (February 15,
　　2010) ..................................................................................................................9

## PRELIMINARY STATEMENT

In crafting its Complaint, Plaintiff ScentSational Technologies, LLC ("ScentSational" or "Plaintiff") has made two strategic decisions that drive this motion to dismiss. First, Plaintiff explicitly admits in paragraph 27 of its Complaint that it has not defined its alleged trade secrets in the Complaint and that those trade secrets "will only be disclosed" during discovery "pursuant to a protective order." Exhibit 1,[1] Complaint (Dkt. 1) at ¶ 27. Second, Plaintiff alleges not only a breach of contract claim based on confidentiality agreements entered into between certain of the parties, but also a myriad of other common law claims that range from misappropriation of trade secrets to unjust enrichment to a claim for a constructive trust. As described below, Plaintiff's strategic decisions on these points provide the grounds on which Defendants PepsiCo, Inc., Pepsi-Cola Technical Operations, Inc., The Quaker Oats Company, Stokely-Van Camp, Inc., and Tropicana Products, Inc. (collectively the "PepsiCo Defendants" or "Defendants") move this Court to dismiss ScentSational's Complaint.

Plaintiff Alleges Trade Secrets With Insufficient Specificity. Because ScentSational fails to define its purported trade secrets in the Complaint, this Court should, at a minimum, order ScentSational to provide a detailed description disclosing the trade secrets that it claims were misappropriated.[2] This can best be accomplished through a separate document defining the purported trade secrets with specificity filed under seal either at the motion to dismiss stage or at the outset of discovery. At the motion to dismiss stage, this level of specificity is required under *Iqbal* and *Twombly*, which courts have increasingly applied in recent years to trade secret claims.

---

[1] Citations to "Exhibit _" refer to the exhibits attached to the Declaration of Richard B. Harper in Support of Defendants' Motion to Dismiss.

[2] In fact, ScentSational admits in its Complaint that the PepsiCo Defendants never disclosed any of ScentSational's purported trade secrets it alleges Defendants misappropriated. *See* Exhibit 1 at ¶¶ 95, 109, 113.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although Plaintiff has indicated that it will disclose its trade secrets during discovery, its offer appears to be half-hearted, at best. Indeed, as this Court pointed out during the May 15, 2014 conference:

> THE COURT: I think if you give them a statement as to what the trade secret is, you might have a deal.
>
> MR. GARNER: Yes, well, we would do that in response to an interrogatory after we were able to digest all the information that comes from the documents that we've gotten from our --
>
> THE COURT: But that's not what you promise in paragraph 27. You're adding conditions. You didn't say anything about that in paragraph 27.

Transcript of May 15, 2014 Pre-Motion Conference (Dkt. 27) at 23:18-24:1. Defendants therefore, in the alternative, move the Court to enter a protective order associated with the commencement of discovery under which Plaintiff will be required to make the same detailed disclosure of what constitutes its alleged trade secrets before any other discovery is allowed. Under either approach, Plaintiff's disclosure will educate the Court and Defendants regarding the specific nature of the alleged trade secrets, help to avoid overly broad and burdensome discovery requests, give Defendants notice of Plaintiff's claims that they will need to prepare their case, and, perhaps most importantly, prevent Plaintiff from morphing its purported trade secrets to fit the information obtained through discovery from Defendants.

<u>Plaintiff Alleges Impermissibly Duplicative Causes of Action</u>. Additionally, Plaintiff's Complaint alleges multiple claims all premised on the same conduct. This is inconsistent with New York law that holds a plaintiff's exclusive common law cause of action, under the circumstances, is breach of contract. More specifically, New York courts will only allow Plaintiff's misappropriation claim to proceed if it has also pled an independent tort based on an

extended course of dealing between the parties.  Here, Plaintiff asserts that it has pled a

"fiducia[ry] relationship" between the parties:

> MR: GARNER: . . . . [W]e think that a fiducia[ry] relationship was established[,] which[,] under *Topps*[,] would allow us to plead [breach of contract and misappropriation of trade secrets] in the alternative."

Dkt. 27 at 18:16-18.  Plaintiff, however, has pled no such course of dealing—there is no

allegation of any agreement for Plaintiff to develop (or provide) products with the Defendants,

let alone any allegation that Plaintiff has had a significant monetary relationship with

Defendants.  Plaintiff's common law claims should therefore be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Background

Plaintiff's lawsuit is premised on its alleged trade secrets related to aroma technology, yet

it fails to identify them.  *See* Exhibit 1 at ¶ 20.  Aroma technology encompasses a broad spectrum

of aspects including, among others, flavor modification and aroma delivery systems for packaged

goods.  *See* Exhibit 1 at ¶ 20.  Plaintiff was formed in 2002 to pursue aroma technology "for the

application, manufacture, and use of scented packaging to enhance a product's aroma and taste."

Exhibit 1 at ¶¶ 21-22.  Indeed, Plaintiff alleges that one of its founders, Steven M. Landau,

"invented the concept of flavor modification using aroma delivery systems including, but not

limited to, manufacturing aromatic product packaging for food and beverages."  Exhibit 1 at ¶

20.

Although Plaintiff alleges that Defendants have been involved in the aroma technology

space, *see* Exhibit 1 at ¶ 31, the Complaint with its exhibits reveal that *both* Plaintiff and

Defendants have each independently developed technology in this field for over a decade, *see*

Exhibit 1 at ¶ 21-22, Exhibit 1, Exhibit F (citing to U.S. Patent No. 6,102,224, a patent issued to

PepsiCo in 2000 related to aroma technology).   Since at least 2000—before Plaintiff was formed—Defendants have been engaged in the development of technology that incorporates aroma into certain consumer packaged goods, and have filed numerous patent applications related to that technology.  *See, e.g.*, Exhibit 1, Exhibit F (citing to U.S. Pat. No. 6,102,224, a patent issued to PepsiCo in 2000, as "an additional means to adhere" aroma to a product's packaging in a subsequent patent application).   Landau, the founder of ScentSational, has also applied for at least one patent in the area of aroma technology.  *See, e.g.*, Exhibit 1, Exhibit I (citing to U.S. Patent Application No. 2007/0262165, a patent application filed by Landau in 2007).

Within this context, the parties had a relationship in which Plaintiff and various Defendants entered into four agreements for the purpose of sharing confidential information.  *See* Exhibit 1, Exhibits A, B, C, D.   During this time, Defendants had sporadic meetings with Plaintiff, *see* Exhibit 1 at ¶ 75, and were provided with samples of Plaintiff's technology, *see* Exhibit 1 at ¶ 72.

Typical of confidentiality agreements, each contract defines the scope of confidential information that is protected under the agreement and what is not, s*ee, e.g.*, Exhibit 1, Exhibit D (defining confidential information, subject to certain exceptions such as information that was publicly available at the time of disclosure or independently developed "without reliance upon or reference to the 'Confidential Information'"), the obligations under the agreements, *see, e.g.*, Exhibit 1, Exhibit A (stating that the information exchanged pursuant to the agreement "shall not be disclosed to others or used for purposes other than the Project"), and the remedies available under the agreements, *see, e.g.*, Exhibit 1, Exhibit C (allowing for injunctive relief "in addition to the remedies otherwise available to the other party at law or in equity").

The confidentiality agreements reflect the business arrangement between parties.  The agreements all contain provisions disclaiming any relationship between the parties.  *See, e.g.,* Exhibit 1, Exhibit D ("This Agreement does not create a relationship of agency, partnership, joint venture, or license between the Parties.  Furthermore, this Agreement does not obligate [Defendant PepsiCo] to buy, nor obligate [Plaintiff] to sell, any ingredient, product, or service whatsoever.").  Indeed, although Plaintiff alleges a "nearly-decade long relationship," Exhibit 1 at ¶ 82, there are no allegations that it entered into any agreements to commercialize or otherwise develop projects that incorporated ScentSational's technology, let alone agreements that generated significant revenue, *see* Exhibit 1 at ¶¶ 80-82.  The factual allegations in the Complaint support nothing more than meetings between what would effectively be a supplier and a potential customer.

## II.      Procedural Background

On December 5, 2013, Plaintiff filed its Complaint against Defendants alleging: (1) Misappropriation of Trade Secrets (Count One); (2) Breach of Four Separate Contracts (Counts Two - Five); (3) Unfair Competition (Count Six); (4) Unjust Enrichment (Count Seven); (5) Constructive Trust (Count Eight); and (6) Correction of Inventorship (Count Nine).  *See* Exhibit 1.

Plaintiff's allegations focus primarily on the alleged confidential information exchanged between the parties and supposedly misappropriated by Defendants.  However, by its own admission, Plaintiff intentionally fails to disclose those alleged trade secrets:

> ScentSational's trade secrets will only be disclosed in the instant action pursuant to a protective order executed by the parties and any agreed-upon third parties, and So Ordered by the Court.

Exhibit 1 at ¶ 27.

Plaintiff claims that virtually everything related to aroma technology is potentially its trade secret.  Plaintiff alleges its trade secrets include methods of using certain aromas to convey sweetness or freshness to the consumer, "specific aromatic compounds to offset bitter and other unappealing tastes," "aromatic flavors to enhance the overall consumer experience," and scented packaging "to influence consumer preference and purchasing behavior."  Exhibit 1 at ¶ 23.  Plaintiff also asserts that its alleged trade secrets include "manufacturing processes, technologies, methodologies, consumer studies, and other commercial knowhow underlying ScentSational's trade secret encapsulated aroma technologies."  Exhibit 1 at ¶ 28.

Plaintiff then uses six labels within that broad construct which, when viewed together, functionally comprise the entire aroma technology field.  Plaintiff offers labels ranging from the "Consumer Study Trade Secret" to the "Orange Juice Trade Secrets."  *See, e.g.*, Exhibit 1 at ¶¶ 70, 71.  For example, Plaintiff uses the label "Orange Juice Trade Secrets" and states that the alleged trade secrets are "concerning various methods of applying specially formulated aroma to the bottle closure, fitment, or packaging to its Tropicana products to give consumers the perception that Tropicana juice smelled and tasted more like fresh squeezed juice."  Exhibit 1 at ¶ 71.  Plaintiff, however, offers no level of specificity beyond that referencing description and no means by which Defendants can ascertain which aspects of these broad technology areas are alleged to be Plaintiff's trade secrets, and which other aspects are merely within the public domain.

Plaintiff also makes reference to and tries to establish a link with the publications of Defendants' patent applications.  *See, e.g.*, Exhibit 1 at ¶¶ 93, 103, 112.  First, Plaintiff concedes that its charts referencing Defendants' patent applications and patent do not even contain all of the trade secrets it alleges Defendants misappropriated.  *See, e.g.*, Exhibit 1 at ¶ 93 ("The chart

below (referencing the '245 Publication) includes *some* of ScentSational's Trade Secrets . . .")
(emphasis added).  Second, even according to its own Complaint, the Defendants do not disclose
any of Plaintiff's alleged trade secrets in the patent applications.  *See, e.g.*, Exhibit 1 at ¶ 95
("[T]he '549 Application does not expressly disclose ScentSational's Trade Secrets.").
Therefore, Plaintiff's attempt to link its generic labels to portions of Defendants' patent
applications does little or nothing to clarify what underlying information is supposed to
constitute Plaintiff's alleged trade secrets.

In response to Plaintiff's Complaint, Defendants submitted a letter to the Court on
January 30, 2014 seeking leave to file a motion to dismiss Plaintiff's Complaint.  Dkt. 21.  On
February 4, 2014, Plaintiff submitted a letter in opposition to Defendants' request.  Dkt. 22.  On
May 15, 2014, the Court held a conference to discuss the proposed motion to dismiss the
Complaint.  The Court subsequently granted leave for Defendants to file this motion.

## LEGAL ARGUMENT

Fed. R. Civ. P. 12(b)(6) requires the court to assess whether the complaint "contain[s]
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,
570 (2007)).[3]  A claim is plausible on its face only when "the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged."  *Id.*  Accordingly, "[a] pleading that offers labels and conclusions or a formulaic
recitation of the elements of a cause of action will not do."  *Id.*  Because Plaintiff's Complaint
fails to identify the trade secrets at issue, and instead offers only conclusory labels, the Court
should grant this motion to dismiss for failure to state a claim.

---

[3] Internal citations and quotations omitted throughout unless otherwise noted.

## I.    Plaintiff Fails to Identify Its Trade Secrets With Sufficient Particularity (All Counts)

Recent trade secret case law from around the country has established a well-defined trend to require plaintiffs to identify their alleged trade secrets with sufficient particularity early in the litigation.  This trend has manifested itself in two ways:  (1) by dismissing the complaint and requiring plaintiffs to replead the alleged trade secrets with sufficient particularity; or (2) by requiring plaintiffs to submit a particularized statement describing the alleged trade secrets in detail at the outset of discovery.  ScentSational overtly omitted its claimed trade secrets from the Complaint, directly placing it at odds with precedent requiring increased specificity at the motion to dismiss stage and before allowing discovery to proceed against defendants.  Both paths—dismissal or a protective order for discovery purposes—support the same fundamental result here:  that the Court direct ScentSational to disclose its alleged trade secrets in a separate document (whether as a sealed exhibit to the Complaint or as a discovery disclosure) with real specificity from which this Court and Defendants can discern the trade secrets asserted.

### A.    The Court Should Grant Defendants' Motion to Dismiss or Motion for More Definite Statement and Require Plaintiff to Identify Its Alleged Trade Secrets with Sufficient Particularity

Courts have debated the level of particularity with which a plaintiff must allege a trade secret—a debate that has only increased in the wake of *Twombly*, which held that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Defendants recognize that this Court in *Medtech Prods. Inc. v. Ranir, LLC*, acknowledged *Twombly*'s heightened pleading standards, but was reluctant to require a plaintiff to plead the alleged trade secret with particularity on a motion to dismiss.  *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 785-86, 790 (S.D.N.Y.

2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), but denying motion to dismiss even where the Court "recognize[d] that [the plaintiff], for the most part, d[id] not specify the particular trade secrets at issue").

However, the trend since *Twombly* (and, subsequently, *Iqbal*) has been to require plaintiffs to disclose their alleged trade secrets in the complaint with particularity. *See, e.g.*, *Rovince Intern. Corp. v. Preston*, No. CV 13-3527 CAS (PJWx), 2013 WL 5539430, at \*6-7 (C.D. Cal. Oct. 7, 2013) (granting motion for more definite statement because the complaint's "encyclopedic lists do not identify the trade secret with reasonable particularity"); *Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 407 (2012) (affirming dismissal of misappropriation of trade secrets claim where the complaint did "not identify what trade secrets" were misappropriated and "simply reference[d] a laundry list of items that [plaintiff] considers to be 'Confidential Information'"); *Medafor, Inc. v. Starch Med. Inc.*, No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at \*1-2 (D. Minn. July 16, 2009) (granting motion to dismiss where plaintiff's labels of its alleged trade secrets were "so broad as to be meaningless").

Numerous commentators have confirmed this trend. *See* Exhibit 2, Eric W. Schweibenz and Lisa M. Mandrusiak, "*Discovering*" *Trade Secrets: The Devil Is in the Details*, 84 PTCJ 492 (July 20, 2012), *available at* http://www.oblon.com/sites/default/files/news/schweibenz %20mandrusiak%20trade%20secrets.pdf ("[T]he modern trend appears to be in favor of the defendant's goal of early identification of the trade secrets at issue."); Exhibit 3, Lee Ann Stevenson, *Can You Be More Specific?*, New York Law Journal (February 15, 2010), *available at* http://kirkland.com/siteFiles/Publications/D6EC105C241DDD22D9E96063869166B5.pdf ("Some recent cases suggest that courts around the country are becoming increasingly impatient

with plaintiffs who seek to rely on vague and general descriptions of alleged trade secrets until after discovery is under way.").

Notwithstanding its own admission in the Complaint that it will only disclose its trade secrets during discovery (and not in the Complaint), Plaintiff still claims to have pled its alleged trade secrets with enough specificity to put Defendants on notice of its claims. *See* Dkt. 27 at 16:17-19. The Complaint uses two methods to articulate its alleged trade secrets, but each fails to approach the level of specificity required by *Iqbal* and *Twombly*—or provide any real specificity whatsoever.

First, as described above, Plaintiff offers generalized "labels" of its alleged trade secrets, such as the "Orange Juice Trade Secrets" and the "Consumer Study Trade Secrets." *See, e.g.*, Exhibit 1 at ¶¶ 70-71. These labels, while providing convenient referencing tools, fail to adequately describe the actual substance of the alleged trade secrets and instead leave Defendants unable to defend against Plaintiff's allegations. Indeed, courts have dismissed misappropriation of trade secret claims where plaintiffs have provided only lists of categories of alleged trade secrets. *See Medafor, Inc.*, 2009 WL 2163580, at *1-2 (dismissing misappropriation claim where plaintiff's labels of its alleged trade secrets included such broad categories as "business methodologies, formulas, devices, and compilations of information"); *Preferred Sys. Solutions, Inc.*, 284 Va. at 407 (stating that labels of alleged trade secrets such as customer lists or "pricing policies and [Plaintiff's] business methods" did not identify "what trade secrets [Defendant] misappropriated"). For example, in *Rovince Intern. Corp. v. Preston*, the court granted the defendant's motion for more definite statement because of plaintiff's "vague" labels of its alleged trade secrets such as "customer buying and selling habits and special needs" and "unique methods and procedures regarding pricing and advertising." *Rovince*

*Intern. Corp.*, 2013 WL 5539430, at *6-7.   Here, Plaintiff's description of its alleged trade secrets are similarly "vague."   Indeed, the labels of its alleged trade secrets that include "manufacturing processes" or "other commercial knowhow," Exhibit 1 at ¶ 28, although in the context of orange juice, are similarly "so vague or ambiguous that [the Defendants] cannot reasonably prepare a response," *Rovince Intern. Corp.*, 2013 WL 5539430, at *7.

Second, Plaintiff suggests that by referencing the publications of Defendants' patent applications it provides sufficient particularity to survive a motion to dismiss.   However, for each and every chart referencing the use of its alleged trade secrets in Defendants' patent applications and patent, Plaintiff concedes that such charts do not even contain *all* of the purported trade secrets Defendants used.   *See* Exhibit 1 at ¶¶ 93 ("The chart below (referencing the '245 Publication) includes *some* of ScentSational's Trade Secrets . . ."); 103 ("The chart below (referencing the '909 Publication) includes *some* of ScentSational's Trade Secrets . . ."); 112 ("The chart below (referencing the '551 Publication) includes *some* of ScentSational's Trade Secrets . . .") (emphases added).

Moreover, critical to this motion, referencing *Defendants'* patent filings does little to detail *Plaintiff's* alleged trade secrets; even worse, Plaintiff then readily admits that Defendants' patent applications and patent do *not* disclose its alleged trade secrets.   Exhibit 1 at ¶¶ 95 ("[T]he '549 Application does not expressly disclose ScentSational's Trade Secrets."); 109 ("[T]he '637 Patent does not expressly disclose ScentSational's Trade Secrets."); 113 ("[T]he '834 Application does not expressly disclose ScentSational's Trade Secrets.").   Accordingly, reference to publications that neither contain all of Plaintiff's alleged trade secrets nor disclose Plaintiff's alleged trade secrets cannot assist Defendants or this Court in meaningfully identifying what Plaintiff claims was misappropriated.   *See Synopsys, Inc. v. ATopTech, Inc.*, No.

11

C 13-cv-02965, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) (dismissing misappropriation of trade secrets claim where complaint referencing, among other things, the defendant's patents was "too sweeping and vague for Defendant to be on notice of what trade secrets are at issue and where the boundary between those secrets and general knowledge might lie").

How, then, should Plaintiff be required, procedurally, to submit the particularized statement of its trade secrets under seal?  Although Plaintiff suggested at the May 15, 2014 conference that it would simply produce documents containing its trade secrets, *see* Dkt. 27 at 17:20-22, such a process would leave Defendants (a) to identify which documents might contain the alleged trade secrets, (b) to aggregate those portions of the documents that might be relevant to the alleged trade secrets, (c) to draw lines between what Plaintiff claims to be a trade secret versus what is publically known, and then (d) to waste valuable deposition time devoted primarily to asking what actually is claimed as a trade secret, *see* Dkt. 27 at 17:20-22.  Courts have suggested the possibility of filing a particularized trade secret statement under seal as part of the complaint.  *See Synopsys, Inc.*, 2013 WL 5770542, at *7 (dismissing misappropriation of trade secrets claim and suggesting that "Plaintiff may identify its alleged trade secrets in a sealed filing"), *Savor, Inc. v. FMR Corp.*, No. 00C-10-249-JRS, 2001 WL 541484, at *3 n.19 (Del. Apr. 24, 2001) (stating plaintiff's "concern that such pleading would publicize the same information for which it seeks trade secret protection" was "unfounded" as the rules of procedure allow for such confidential documents to be filed under seal).  Sealing of the alleged trade secret disclosure document protects what a plaintiff claims to be the trade secret while satisfying current pleading requirements.

Accordingly, the Court should grant Defendants' motion to dismiss or motion for more definite statement and require Plaintiff to identify its trade secrets, if any, with sufficient particularity as a sealed exhibit to its Complaint.

**B.     In the Alternative, The Court Should Order Plaintiff to Disclose Its Alleged Trade Secrets With Sufficient Particularity at the Outset of the Discovery Process**

Although case law is developing with regard to the level of specificity required at the pleading stage, the overwhelming majority of courts already require plaintiffs to disclose their alleged trade secrets with specificity *before* any discovery commences related to the defendants' confidential information.  *See MSCI Inc. v. Jacob*, 36 Misc. 3d 211, 213-14 (Sup. Ct., N.Y. County 2012) (precluding plaintiffs from taking further discovery until they identify their trade secrets); *Hill v. Best Med. Intern., Inc.*, No. 09-1194, 2010 WL 2546023, at *4 (W.D. Penn. June 24, 2010) (staying discovery of Defendant's trade secrets and confidential information pending Plaintiff's identification of its trade secrets); *Ikon Office Solutions, Inc. v. Konica Minolta Bus. Solutions, U.S.A., Inc.*, No. 3:08-CV-539-RLV-DCK, 2009 WL 4429156, at *4-5 (W.D.N.C. Nov. 25, 2009) (granting protective order requiring plaintiff to identify with reasonable particularity the trade secrets it claims defendants misappropriated before allowing discovery of defendant's trade secrets); *DeRubeis V. Witten Techs., Inc.*, 244 F.R.D. 676, 679-82 (N.D. Ga. 2007) (requiring plaintiff to describe its alleged trade secrets with "reasonable particularity" before it will be able to seek discovery of defendant's trade secrets); *Dura Global Techs., Inc. v. Magna Donnelly, Corp.*, No. 07-cv-10945, 2007 WL 4303294, at *5 (E.D. Mich. Dec. 6, 2007) (staying discovery of defendant's trade secrets until plaintiff identified its trade secrets with reasonable particularity); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1322, 1326 (S.D. Fla. 2001) (requiring plaintiff to "list and reasonably describe the trade secrets it seeks to protect"); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001)

(requiring plaintiff to provide its alleged trade secrets at the outset of discovery so that the court "can evaluate the relevance of plaintiff's discovery and address any objections"); *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33-34 (Del. Ch. 1986) (staying discovery until Plaintiff filed trade secret statement).

Many commentators, having noted the current trend at the motion to dismiss stage, discuss the majority of cases requiring plaintiff to disclose its alleged trade secrets at the outset of discovery and have observed:

> If vague identifications of trade secrets are not successfully challenged at the pleading stage, defendants typically have an opportunity to force the plaintiff's hand in discovery by requesting that the plaintiff identify, with specificity and precision, each alleged trade secret it contends was misappropriated in a manner that allows the defendant to identify the elements and boundaries of the alleged secret information.

Exhibit 4, Casey Mangan and Jeffrey A. Wakolbinger, *On the Importance of Early Identification and Getting Specific*, American Bar Association (March 28, 2014), *available at* http://apps.americanbar.org/litigation/committees/intellectual/articles/spring2014-0314-on-importance-early-identification-getting-specific.html.

The need for a particularized statement of alleged trade secrets is hardly surprising given the important policy reasons underlying early identification of alleged trade secrets. First, early identification aids the court in determining whether the claims have merit. Exhibit 5, Brent J. Gurney, Joshua T. Ferrentino and Alexander B. White, *Benefits of Early Discovery in Defending Trade Secret Misappropriation Claims*, 249 N.Y.L.J. 113 (June 13, 2013). Indeed, if such a claim is without merit, allowing Plaintiff to take discovery of Defendants' confidential information prior to disclosing its trade secrets creates the potential for abuse, and would allow the Plaintiff to first identify information that is Defendants' own through discovery and then later "tailor their theory of misappropriation to [Defendants'] work." *See MSCI Inc. v. Jacob*, 36

Misc. 3d 211, 214 (Sup. Ct. N.Y. County 2012) (citing *Sit-Up Ltd. v. IAC/InterActiveCorp.*, 2008 WL 463884, *6-7 (S.D.N.Y. 2008)).  Second, requiring plaintiffs to identify their alleged trade secrets early in the litigation will allow the court to better determine the relevancy of any discovery requests.  *See* Exhibit 5.  Third, early identification of the alleged trade secrets will allow the defendant to "mount a defense based on specific, not general allegations."  *Id*.  As the Court has explained in trade secret cases, "[a]t the very least, a defendant is entitled to know the bases for plaintiff's charges against it.  The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are."  *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974).  Fourth, requiring plaintiffs to identify their alleged trade secrets early in the litigation "prevents abuse of the discovery process for competitive advantage."  Exhibit 5.

Again, Plaintiff has highlighted this issue by seemingly offering precisely what Defendants request, namely, that it disclose its alleged trade secrets with specificity:

> ScentSational's trade secrets will only be disclosed in the instant action pursuant to a protective order executed by the parties and any agreed-upon third parties, and So Ordered by the Court.

Exhibit 1 at ¶ 27.[4]  Although Plaintiff suggested in its pre-motion to dismiss letter that this issue is premature because discovery has not yet formally commenced, *see* Dkt. 22, case law makes

---

[4] There is no mystery to what Plaintiff has offered in ¶ 27 of its Complaint, what Defendants have requested by way of this motion, or what the Court considered during the parties' May 15, 2014 conference—as part of this litigation, Plaintiff will be required to disclose any and all alleged trade secrets it claims are at issue in this case.  Although a formal interrogatory requesting Plaintiff's disclosure of its trade secrets is not likely to be required given Plaintiff's admission that it will disclose its alleged trade secrets, *see* Exhibit 1 at ¶ 27, the content of any such interrogatory or request from Defendants or the Court should come as no surprise.  Commentators have suggested a standardized request in the following manner:

> Identify with precision and specificity each and every alleged trade secret [Plaintiff] contends [Defendant] misappropriated. 'Identify with precision and specificity each and every alleged trade secret'

clear that, from a timing perspective, the issue of disclosure of trade secrets should be addressed *before* any significant discovery of the defendant's confidential information could take place— regardless of how much time passes generally in the case, *see, e.g.*, *AutoMed Techs., Inc.*, 160 F. Supp. 2d at 925-26 (denying motion to dismiss but granting protective order to stay discovery of defendant's trade secrets until plaintiff filed particularized trade secret statement under seal); *StonCor Grp., Inc. v. Campton*, No. C05-1225JLR, 2006 WL 314336, at *2 (W.D. Wash. Feb. 7, 2006) (directing plaintiff to provide a full and complete response to defendant's interrogatory regarding the identification of plaintiff's alleged trade secrets).

In implementing any requirement for Plaintiff to identify its alleged trade secrets with sufficient particularity, the Court should make clear that identification take place in the form of a particularized trade secret statement—essentially a separate document in which the plaintiff details the alleged trade secret. *See AutoMed Techs., Inc.*, 160 F. Supp. 2d at 926 (requiring plaintiff to file "particularized trade secret statement"); *Engelhard Corp.*, 505 A.2d at 33-34 (same); *see also Del Monte Fresh Produce Co.*, 148 F. Supp. 2d at 1326 (granting motion to compel plaintiff to "list and reasonably describe the trade secrets it seeks to protect" where it claimed that a "multitude" of trade secrets were at issue). By way of example, the court in *SmithKline Beecham Pharm. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 447 (Del. 2000), found the

---

as used herein means to provide a specific description of each such alleged trade secret, on an individual basis for each such alleged trade secret, in such a manner that the exact identity, scope, boundaries, constitutive elements, and content of each such alleged trade secret are fully disclosed in writing, including any asserted combinations, [and with precision above that required by California Code of Civil Procedure section 2019.210]. Plaintiff should not rely on any vague or conclusory phrases that do not separately list and describe each such alleged trade secret.

Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 NW. J. TECH. & INTELL. PROP. 68, 99 (2006).

16

plaintiff's disclosure of its alleged trade secrets sufficient where they were disclosed in a separate document totalling over 37 pages.  *See also* Exhibit 2.  Additionally, in a different case, a list of 103 separate items purported to be trade secrets totalling 54 pages was found to be responsive to the defendant's request for the plaintiff to disclose its alleged trade secrets apart from the allegations in the complaint.  *Struthers Scientific & Intern. Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 152 (D. Del. 1970).

In short, whether at the motion to dismiss stage or at the very outset of discovery, the fundamental point remains the same:  Plaintiff should be required to do what it has already offered—provide a document that specifies its alleged trade secrets.

Accordingly, the Court should dismiss the Complaint without prejudice or enter a Protective Order, either way directing Plaintiff to provide a particularized trade secret statement.[5]

## II. Plaintiff's Claims For Misappropriation of Trade Secrets, Unfair Competition, Unjust Enrichment, and Constructive Trusts Should Be Dismissed Because They Are Duplicative of the Breach of Contract Claims

In addition to the breach of contract claims brought by Plaintiff based on the confidentiality agreements executed between certain of the parties, Plaintiff brings several additional common law claims based on the same factual allegations.  These additional counts

---

[5] As the Court may recall, Defendants' pre-motion to dismiss letter raised the issue that the claims for misappropriation of trade secrets and unfair competition are barred, at least in part, by the statute of limitations.  *See* Dkt. 21.  Defendants have decided that statute of limitations as to these and any other claims in the Complaint, including the breach of contract claims, is a defense that would be asserted in any applicable answer.  However, assuming that Defendants used Plaintiff's alleged trade secrets in connection with Defendants' patent applications, as Plaintiff alleges, the preparation and filing of at least two of these patent applications occurred more than three years prior to Plaintiff's filing of the Complaint, which renders Plaintiff's claims of misappropriation of trade secrets and unfair competition, at least with respect to these applications, time-barred.  *See Galet v. Carolace Embroidery Co.*, 97 CIV. 5702 (OLC), 1998 WL 386434, at *2 (S.D.N.Y. July 10, 1998) (misappropriation of trade secrets claim governed by three-year statute of limitations).

require dismissal because they are merely duplicative of and subsumed by Plaintiff's breach of contract claims and therefore fail to state a cause of action.

### A. Plaintiff's Claims for Misappropriation of Trade Secrets (Count I) and Unfair Competition (Count VI) Should Be Dismissed Because No Duty Independent of the Confidentiality Agreements Exists

Plaintiff's tort claims for misappropriation of trade secrets and unfair competition should be dismissed because they are impermissibly duplicative of the breach of contract claims. Generally "when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual," precluding a plaintiff from asserting tort claims. *Document Sec. Sys., Inc. v. Coupons.com, Inc.*, No. 11-cv-6528, 2013 WL 1945954, at *3 (W.D.N.Y. May 9, 2013) (applying the rule to a misappropriation of trade secret claim). An exception to the general rule exists, but only where the plaintiff pleads that the defendant violated a "legal duty independent of the contract" owed to the plaintiff. *Id.*

New York courts have interpreted an "independent legal duty" as requiring more than an arms-length business relationship or a conventional business relationship. The independent legal duty "must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *U.S. ex rel. Evergreen Pipeline Constr. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 162 (2d Cir. 1996) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987)).

To satisfy such a requirement, courts have found an independent legal duty *only* where a plaintiff has pled an "extensive" course of dealing involving numerous lucrative agreements that create a close working relationship. *See, e.g., Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 57-58 (1st Dep't 1988) (finding independent legal duty to exist where the course of dealing between the parties spanned over 15 years and involved a series of exclusive manufacture and distribution agreements that proved very lucrative to the defendants).

Critically, an "arms-length business relationship" or "a conventional business relationship, without more" is *not* sufficient to create an independent legal duty owed to the plaintiff. *Document Sec. Sys., Inc. v. Coupons.com, Inc.*, No. 11-cv-6528, 2013 WL 1945954, at *4 (W.D.N.Y. May 9, 2013).

These principles have been applied in the context of trade secret claims. In *Document Sec. Sys., Inc.*, the Court found that a six year arms-length business relationship and "an express agreement setting forth Defendant's duty of confidentiality" defeated the plaintiff's allegations that a confidential or fiduciary relationship existed outside of the parties' contractual relationship. *Id*. at *3-5. In addition to *Document Sec. Sys., Inc.*, New York courts have consistently applied these principles to unfair competition claims where, as here, an express confidentiality agreement governs the entire relationship of the parties. *See Dorset Indus., Inc. v. Unified Grocers, Inc.*, 893 F. Supp. 2d 395, 414 (E.D.N.Y. 2012) (dismissing unfair competition claim as duplicative of breach of contract claim where plaintiff failed to "allege that the Defendant had an independent legal duty other than its duty to comply with its express and implied obligations under the Agreements"); *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) (dismissing unfair competition claim where plaintiff "alleged a breach of the express provision of the Agreement" which "does not spring from any independent legal duty such as a fiduciary relationship").

Here, Plaintiff fails to plead an independent legal duty because of what little is pled, and, more importantly, because of what is not pled. Plaintiff asserts that it has pled a "fiducia[ry] relationship" between the parties:

> MR: GARNER: . . . . [W]e think that a fiducia[ry] relationship was established[,] which[,] under *Topps*[,] would allow us to plead [breach of contract and misappropriation of trade secrets] in the alternative."

Dkt. 27 at 18:16-18.  While Plaintiff does allege a "nearly-decade long confidential relationship," Exhibit 1 at ¶ 82, it offers no specificity as to what constitutes a "confidential relationship" outside of the confidentiality agreements.  Plaintiff does not allege that the parties entered into any exclusive licensing or distribution agreements, let alone allege a lucrative monetary relationship.  Plaintiff concedes that the parties never entered into any agreements to commercialize or otherwise develop Plaintiff's technology.  *See* Exhibit 1 at ¶¶ 80-82.  There are simply no allegations of a continuous or close relationship.  Plaintiff's allegations that its representatives attended occasional meetings with Defendants and provided them with samples in certain instances, *see e.g.*, Exhibit 1 at ¶ 75, is insufficient to create an independent legal duty.  Indeed, Plaintiff asserts nothing more than a "seemingly unremarkable arms-length business relationship" which, without more, does not create an independent legal duty.  *Document Sec. Sys., Inc. v. Coupons.com, Inc.*, 2013 WL 1945954, at *4.[6]

As in *Document Sec. Systems, Inc.*, "the alleged separate duty of confidentiality that Defendant owed to Plaintiff is indistinguishable from the contractual duty of confidentiality owed under the [confidentiality agreement]."  *Id.* at *5.  Plaintiff's tort claims are based upon the same factual allegations that form the basis of the breach of contract claims, namely, that Defendants allegedly misappropriated its trade secrets and confidential information for use in

---

[6] As discussed below, Plaintiff's reliance on *Topps Co., Inc. v. Cadbury Stani SAIC*, 380 F. Supp. 2d 250 (S.D.N.Y. 2005) to argue the existence of a confidential relationship extraneous to the confidentiality agreements is factually inapposite.  *See* Dkt. 22.  Further, the Court in *Document Sec. Sys., Inc.*, rejected a similar argument when the plaintiff attempted to rely on *Topps* to support the existence of an independent legal duty.  *Document Sec. Sys., Inc.*, 2013 WL 1945954, at *3-4.  In rejecting the plaintiff's argument, the court in *Document Sec. Sys., Inc.* noted that the relationship between the parties in *Topps* extended for almost 40 years and involved a series of exclusive licensing agreements.  *Id.* at *3.  There is no such relationship here.  Additionally, in rejecting its application to the facts at hand, the *Document Sec. Sys., Inc.* court stated that "the pertinent language in *Topps* is dicta" and, in any event, the defendant failed to argue that the misappropriation of trade secrets claim was duplicative of the breach of contract claim.  *Id.* at *3-4.

filing and prosecuting the '549 and '834 Applications, and in obtaining the '637 Patent.  *See* Exhibit 1 at ¶¶ 132, 142, 153, 165, 175, 182.  Plaintiff has failed to plead any independent factual basis for asserting its claims for misappropriation of trade secrets and unfair competition.  *See Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, at *7 (S.D.N.Y. Mar. 24, 2009) (dismissing unfair competition claim as duplicative of breach of contract claim where it was "based entirely on alleged conduct that is proscribed by the express terms of the contract"); *see also Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 606 (S.D.N.Y. 2004) (stating that "the comprehensive nature of the contract is likely to be inconsistent with an independent tort claim of misappropriation").

Thus, the lack of an extensive and close relationship precludes Plaintiff's allegations of the existence of an independent legal duty extraneous to the agreements.  Accordingly, the Court should grant Defendants' motion to dismiss the misappropriation of trade secrets and unfair competition claims as they are impermissibly duplicative of the breach of contract claims.

### B.   Plaintiff's Unjust Enrichment Claim (Count VII) Should Be Dismissed Because a Valid and Enforceable Agreement Governs the Subject Matter of the Dispute

Plaintiff's claim for unjust enrichment requires dismissal because the confidentiality agreements executed between the parties govern the subject matter of this dispute.  "[I]t is black-letter law in New York that recovery on an equitable theory of unjust enrichment is not permitted where the matter at issue is covered by a valid, enforceable contract."  *Coty, Inc. v. L'Oreal S.A.*, No. 08-0903-cv, 2009 WL 835849, at *1 (2d Cir. Mar. 31, 2009); *see also Law Debenture v. Maverick Tube Corp.*, No. 06 Civ. 14320, 2008 WL 4615896, at *13 (S.D.N.Y. Oct. 15, 2008) (holding that "a claim for unjust enrichment, even against a third party, cannot proceed when there is an express agreement between two parties governing the subject matter of the dispute").

Here, Plaintiff's unjust enrichment claim is based upon the same subject matter and allegations as its misappropriation of trade secrets and breach of contract claims, namely, Plaintiff alleges:

1) Plaintiff developed its alleged trade secrets and confidential information that Defendants learned of only through the parties' confidential and contractual relationship. *Compare* Exhibit 1 at ¶ 187, *with* Exhibit 1 at ¶¶ 65-82.

2) Defendants were unjustly enriched at Plaintiff's expense. *Compare* Exhibit 1 at ¶¶ 188, 190, *with* Exhibit 1 at ¶¶ 123-29.

3) Defendants obtained commercial advantages. *Compare* Exhibit 1 at ¶ 189, *with* Exhibit 1 at ¶ 84.

4) Plaintiff has suffered damages. *Compare* Exhibit 1 at ¶ 191, *with* Exhibit 1 at ¶¶ 123-29.

Plaintiff admits the existence of four valid and enforceable confidentiality agreements. These confidentiality agreements govern the subject matter at issue in this dispute. Indeed, the confidentiality agreements all contain provisions regarding the disclosure and use of confidential information. *See, e.g.*, Exhibit 1, Exhibit A ("[The Confidential Information] shall not be disclosed to others or used for purposes other than the Project."). Thus, the Court should dismiss Plaintiff's unjust enrichment claim.

## C. Plaintiff's Claim for Constructive Trusts (Count VIII) Should Be Dismissed Because An Adequate Remedy Exists At Law

Plaintiff seeks constructive trusts over intellectual property it claims Defendants have misappropriated. *See* Exhibit 1 at ¶ 198-200. A constructive trust is an equitable remedy, the purpose of which is to prevent unjust enrichment. *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 106 (S.D.N.Y. 2013). It is well established that a constructive trust will be imposed only where a legal remedy is inadequate and the constructive trust is necessary to prevent unjust enrichment. *See In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004)

(affirming district court's decision not to impose a constructive trust, in part, because an adequate legal remedy existed).

The confidentiality agreements govern the subject matter at issue in this dispute and therefore preclude Plaintiff from claiming that Defendants were unjustly enriched at Plaintiff's expense.  *See supra* § II.B.  Further, "where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists."  *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004).  Thus, because four valid and enforceable contracts govern the subject matter of this dispute, the remedy of a constructive trust is unavailable to Plaintiff.  The Court should therefore deny Plaintiff's request for the imposition of constructive trusts.

Accordingly, the Court should dismiss all common law claims other than the breach of contract claims.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant their motion to dismiss the Complaint in its entirety.

Dated: June 6, 2014                          Respectfully submitted,


                                             /s/ Richard B. Harper
                                             Richard B. Harper
                                             Robert L. Maier
                                             **BAKER BOTTS L.L.P.**
                                             30 Rockefeller Plaza
                                             New York, New York 10112
                                             Telephone:  (212) 408-2500
                                             Facsimile:  (212) 251-2501

                                             *Attorneys for Defendants*