# EXHIBIT 40


PLAINTIFF'S EXHIBIT
1  4/29/16

**11 · 2    VALUING LOSSES IN NEW BUSINESSES**

This chapter discusses how a damages expert should calculate lost profits in these scenarios. Section 11.2 begins with a discussion of the legal framework for establishing lost profits for a new business, the so-called *new business rule*. As we show in this section, the interpretation of the rule varies across jurisdictions, so the damages expert must have a firm understanding of the law—the legal rules within which the expert must operate—before the expert establishes an approach to calculating damages. Section 11.4 presents an analytical framework for calculating lost profits, using the drug company hypothetical and its variations as examples. We conclude that some courts may disallow lost-profit damages where accepted damages and economic theory fully support an award of such damages.

## 11.2  THE LEGAL FRAMEWORK FOR ESTABLISHING LOST PROFITS FOR A NEW BUSINESS

The law has progressed from a *per se* rule against recovery of lost profits by new businesses to a rule allowing such profits as long as they are not speculative and the damages expert can establish proof with reasonable certainty. We begin with a general overview of the evolution of the current new business rule—first discussing the former *per se* rule and then explaining why jurisdictions have adopted the current rule-of-evidence formulation for new businesses. Next we consider examples of cases that have allowed lost profits under the new rule as well as those that have not allowed such profits. We show that courts differ in their interpretation of the rule. Finally, we consider the effect of *Daubert* in connection with a crucial element of the plaintiff's proof in new-business cases: establishing the probability of success of the new venture through taking into account the risk of the business.

### (a) The Evolution of the Current New Business Rule

*(i) The Former New Business Rule.*    An often-quoted statement of the former new business rule (also referred to as the *per se* rule) comes from *Evergreen Amusement Corporation v. Milstead*.[1] In *Evergreen*, a Maryland appellate court affirmed a trial court's denial of testimony relating to lost profits caused by a contractor's delay in clearing and grading a site for a drive-in theater. The court stated:

> Under the great weight of authority, the general rule clearly is that loss of profit is a definite element of damages in an action for breach of contract or in an action for harming an established business which has been operating for a sufficient length of time to afford a basis of estimation with some degree of certainty as to the probable loss of profits, but that, on the other hand, loss of profits from a business which has not gone into operation may not be recovered because they are merely speculative and incapable of being ascertained with the requisite degree of certainty.[2]

An alternate formulation of the former new business rule states that no business can recover anticipated profits because of their uncertainty, but an exception exists if an established business can prove such damages with reasonable certainty.[3] Courts have occasionally awarded lost profits to new businesses even under this former new business rule, but such cases have involved businesses with an established record of earnings. Examples include franchises or businesses that are new

culate lost profits in
legal framework for
*business rule*. As we
jurisdictions, so the
the legal rules with-
shes an approach to
work for calculating
iations as examples.
iges where accepted
1 damages.


**ST PROFITS FOR A**


f lost profits by new
not speculative and
nty. We begin with a
ness rule—first dis-
ictions have adopted
s. Next we consider
new rule as well as
differ in their inter-
in connection with a
ses: establishing the
o account the risk of



the former new busi-
*vergreen Amusement*
ourt affirmed a trial
contractor's delay in
ated:

at loss of profit is a
or in an action for
sufficient length of
y as to the probable
business which has
merely speculative
ertainty.[2]

states that no busi-
nty, but an exception
reasonable certainty.[3]
sses even under this
nesses with an estab-
sinesses that are new

in name only, such as an established business that has changed ownership or has begun operating in a new location.[4]

*(ii) The Current New Business Rule.*    Today, most jurisdictions have rejected the former *per se* bar against recovery of lost profits by a new business in favor of a rule allowing such damages upon proof of reasonable certainty.[5] As one commentator has stated:

> A *per se* "new business" rule is now widely regarded as having failed in an attempt to control the award of damages. Instead of discarding the "new business rule" caption, courts will often state that the rule is no longer a *per se* rule forbidding the award of lost profits damages to new business, "but rather an evidentiary rule that creates a higher 'level of proof needed to achieve reasonable certainty as to the amount of damages.'"[6]

Courts have used several reasons to justify their departure from the former *per se* rule. Such justifications include the following:

- Denying recovery for lack of a sufficient record of earnings is grossly unfair where the defendant's actions have prevented the plaintiff from establishing such a record.[7]
- The *per se* rule would encourage those contracting with new businesses to breach their contracts.[8]
- Economic forecasting has become more sophisticated.[9]
- "Courts have become sufficiently sophisticated in analyzing lost-earnings claims, and have accumulated sufficient precedent on the standard of undue speculativeness in damages awards, to make the balance of costs and benefits tip against the rule."[10]
- Denying damages proved with reasonable certainty merely because the business venture was newly established is "patently unfair."[11]
- The former new business rule is simply "too draconian" to apply in all cases.[12]

Courts can find additional support for the current new-business rule in the *Restatement (Second) Contracts* and the *Uniform Commercial Code*. Section 352 of the *Restatement (Second) Contracts* states the general rule that the plaintiff must establish damages with reasonable certainty. Comment b to Section 352 explains the general rule in relation to new businesses:

> However, if the business is a new one or if it is a speculative one that is subject to great fluctuations in volume, costs or prices, proof will be more difficult. Nevertheless, damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.[13]

Similarly, Comment 2 to *Uniform Commercial Code* Section 2-708 (Seller's Damages for Non-acceptance or Repudiation) states:

> This section permits the recovery of lost profits in all appropriate cases, which would include all standard priced goods. ... It is not necessary to a recovery of "profit" to show a history of earnings, especially if a new venture is involved.[14]

**11 • 4    VALUING LOSSES IN NEW BUSINESSES**

The Ohio Supreme Court relied on both sections 352 and 2-708 in recognizing that a new business may recover lost profits, so long as the plaintiff provides a sufficient amount of proof.[15]

Some jurisdictions have adopted the current new business rule by statute. Prior to 2002, for example, Virginia courts still adhered to the *per se* formulation of the rule. The Virginia legislature reversed this case law with the following statute:

> Damages for lost profits of a new or unestablished business may be recoverable upon proper proof. A party shall not be deemed to have failed to prove lost profits because the new or unestablished business has no history of profits.[16]

Most jurisdictions have now adopted the current new business rule, which allows lost future damages where proof is reasonably certain.[17] But when has the plaintiff proved lost profits with reasonable certainty, and, conversely, what constitutes undue speculation for lost profits? The next section seeks to answer these questions.

**(b) Decisions Interpreting the Current New Business Rule.**    The current new business rule allows a new or unestablished business to recover lost profits if it can prove such losses with reasonable certainty. The inquiry is factual, and the evidence necessary to achieve reasonable certainty depends on the circumstances of each case. Courts differ, however, as to the evidence they will deem sufficient for a new business to establish lost profits. Whereas some courts appear amenable to lost profit claims for new businesses, others require more exacting proof.

This section explores several decisions interpreting the current new business rule. We begin by examining decisions that have allowed the recovery of lost profits and then consider those that have denied recovery. Finally, we consider the effect that *Daubert v. Merrell Dow Pharmaceuticals*[18] has had on new business cases, particularly with respect to one element of the plaintiff's proof: the risk of failure of the new venture.

*(i) Cases Approving the Recovery of Lost Profits.*    In *Energy Capital Corp. v. United States*,[19] the court approved a lost damages award where the trial court drew reasonable inferences from the evidence to arrive at an estimate of damages. The government had contracted with Energy Capital, an established lender, to provide loans to make Housing and Urban Development housing more energy efficient, but it breached the agreement before Energy Capital could finalize any loans under this new venture. At trial, the government conceded the breach but argued that Energy Capital had failed to prove lost profits. The trial court awarded $10 million in damages.

The Court of Appeals for the Federal Circuit began its analysis by reciting the general rule for recovery of lost profits—that the plaintiff must prove both the existence and quantum of lost profits, but "if a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery."[20] The court then applied this general rule to the special case of the new or unestablished business: "While the nature of a new venture may make it difficult to recover lost profits by establishing all of the elements of the general rule, such damages are not barred as a matter of law."[21]

The court rejected the government's argument that the trial court had engaged in unsupported speculation in arriving at its calculation of the plaintiff's lost

8 in recognizing that
tiff provides a suffi-

rule by statute. Prior
ie formulation of the
ollowing statute:

pe recoverable upon
: lost profits because

pusiness rule, which
ain.[17] But when has
nd, conversely, what
tion seeks to answer

ie current new busi-
r lost profits if it can
factual, and the evi-
the circumstances of
deem sufficient for a
: appear amenable to
icting proof.
:urrent new business
recovery of lost prof-
ally, we consider the
n new business cases,
oof: the risk of failure

apital Corp. v. United
the trial court drew
nate of damages. The
ned lender, to provide
nore energy efficient,
ld finalize any loans
the breach but argued
.al court awarded $10

nalysis by reciting the
must prove both the
probability of damage
ll not preclude recov-
ial case of the new or
: may make it difficult
the general rule, such

ial court had engaged
of the plaintiff's lost

profits. Crucial in this decision was the court's recognition that Energy Capital's lost profit damages flowed not from other independent and collateral undertakings but directly from the breached agreement.[22] The court concluded:

> What we have before us is a case in which the trial court drew reasonable inferences based upon the evidence, not a case in which the trial court engaged in unsupported speculation. [citation omitted] ("Certainty [of damages] is sufficient if the evidence adduced enables the court to make a fair and reasonable approximation of the damages. In circumstances such as these we may act upon probable and inferential as well as direct and positive proof." (citations omitted)).[23]

Thus, *Energy Capital* recognized that although the nature of a new business can make it more difficult to prove lost profits, the court can draw reasonable inferences from the evidence to make a fair approximation of damages.

In another case, *Cardinal Consulting Co. v. Circo Resorts, Inc.*,[24] the Minnesota Supreme Court faced a claim of lost profits by a new business. In this case, a Las Vegas hotel breached an agreement to provide accommodations to tour operators who had not previously operated tours in the city. After recognizing the current formulation of the new business rule, the court addressed what types of proof a plaintiff could put forth to support a claim for lost profits—or, in the court's words: "substitutes for past profitability that will remove a plaintiff's anticipated profits from the realm of speculation."[25]

The court listed the following general areas of proof: past performance as an employee plus subsequent success; subsequent success alone; other examples of that type of business; and the plaintiff's skill and expertise together with proven existence of a market for the product.[26] The court then evaluated the plaintiff's evidence of lost profits:

> We agree with Circo that the evidence relating to lost profits that was presented by Cardinal lacks precision. Nevertheless, we can not [sic] say that it was unreasonable for the jury to award lost profits to Cardinal, given the unusual circumstances of this particular enterprise and the devastating effect of Circo's breach.
> Although Cardinal was able to demonstrate no past or future profitability, one of several substitutes was available in the evidence presented at trial.[27]

The *Cardinal* court noted that the jury could reasonably have based its decision to award lost profits on evidence of the plaintiff's skill and expertise plus the proven existence of the market, or on evidence of the profitability of similar businesses in the same geographic area at the same time.[28] Further, the court seems to have been impressed with the egregious nature of the defendant's actions—the "devastating effect" of the breach.

In *DSC v. Next Level Communications*,[29] at issue was lost profits relating to the development of a new communications technology. Unlike *Cardinal*, however, the product in *DSC* was completely new. The plaintiff had yet to sell its product and had not established a market. In rejecting a challenge that lost profits were speculative, the court recognized the history of the telecommunications industry, the intensive market research for the product, the revolutionary nature of the product itself, and the plaintiff's past business success.[30] The court concluded:

> While "damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." [citations omitted.]

- Plaintiff's past performance as an employee
- Profitability of plaintiff and third parties in similar businesses in the same geographic area at the same time
- Proven existence of the market
- Intensive market research for the product
- Plaintiff's prior experience in the same business
- Plaintiff's subsequent business success
- The average experience of participants in the same line of business as the injured party
- Pre-litigation projections, especially when prepared by the defendant[a]
- Expert opinion "supported by tangible evidence with a 'substantial and sufficient factual basis' rather than by mere 'speculation and hypothetical situations'"[b]

[a] *Beverly Hills Concepts v. Schatz & Schatz*, 247 Conn. 48, 717 A.2d 724, 735-37 (1998).
[b] *Kaech v. Lewis County PUD*, 106 Wash.App. 260, 23 P.3d 529, 538-39 (2001).

**Exhibit 11-1.   Evidence Considered by Courts Regarding New Business Damages**

It is true these predictions are not guaranteed. No one can definitively say what the future holds for SDV technology, or DSC and Next Level in particular. However, uncertainty surrounding precisely how the industry will evolve does not reduce all analysis about future developments to mere speculation. Sears [plaintiff's damages expert] based his predictions on data obtained from respected sources in the telecommunications market. The jury chose to believe his estimation of damages. There was sufficient evidence presented to support the jury's verdict.[31]

As these cases illustrate, courts confronting the issue of lost profits in a new business have considered the types of evidence listed in Exhibit 11-1.

Thus, the nature of a new business makes proving lost profits with reasonable certainty more difficult. In egregious cases, courts can award lost profits by drawing on reasonable inferences from the evidence and will substitute other facts for past profitability in the new-business scenario to justify their decision.

*(ii) Cases That Did Not Allow Lost Profits.*   In contrast to the cases discussed in the preceding section, other courts have required more proof for a new business to establish lost future profits. Judge Richard Posner's opinion in *Mindgames, Inc. v. Western Pub. Co.* provides the best statement of this approach.[32] In *Mindgames*, the plaintiff had created a new board game but could not establish a track record through other similar successes on which to establish lost profits. After recognizing the current formulation of the new business rule, Judge Posner stated:

But that leaves us with the question of undue speculation in estimating damages. Abrogation of the "new business" rule does not produce a free-for-all. What makes MindGames' claim of lost royalties indeed dubious is not any "new business" rule but the fact that the success of a board game, like that of a book or movie, is so uncertain. Here newness enters into judicial consideration of the damages claim not as a rule but as a factor in applying the standard. Just as a start-up company should not be permitted to obtain pie-in-the-sky damages upon allegations that it was snuffed out

sinesses in the same

e of business as the

he defendant[a]

ı a 'substantial and
on and hypothetical

., 735-37 (1998).
(2001).

**usiness Damages**

itively say what the
cular. However, un-
does not reduce all
[plaintiff's damages
arces in the telecom-
lamages. There was

profits in a new busi-
1-1.
ofits with reasonable
lost profits by draw-
stitute other facts for
decision.

ses discussed in the
or a new business to
in *Mindgames, Inc. v.*
.[32] In *Mindgames*, the
iblish a track record
ofits. After recogniz-
'osner stated:

stimating damages.
for-all. What makes
'new business" rule
r movie, is so uncer-
iages claim not as a
ipany should not be
it it was snuffed out

before it could begin to operate ... , capitalizing fantasized earnings into a huge present value sought as damages, so a novice writer should not be permitted to obtain damages from his publisher on the premise that but for the latter's laxity he would have had a bestseller, when only a fraction of new books achieve that success. Damages must be proved, and not just dreamed, though "some degree of speculation is permissible in computing damages, because reasonable doubts as to remedy ought to be resolved against the wrongdoer."[33]

Judge Posner explained his decision not to allow lost profits even though he found the current new-business rule would apply:

[The plaintiff] was not in the position of the bestselling author who can prove from his past success that his new book, which the defendant failed to promote, would have been likely—not certain of course—to have enjoyed a success comparable to that of the average of his previous books if only it had been promoted as promised. That would be like a case of a new business launched by an entrepreneur with a proven track record.[34]

Although Judge Posner conceded that some speculation might be appropriate in calculating lost profits, he nonetheless found the new venture before him too uncertain for such an award. His example of the bestselling author who writes a new book suggests that he would allow recovery of lost profits only where the new business was similar to other previously successful ventures by that same plaintiff. To be fair, Judge Posner never said that his bestselling-author illustration was the only circumstance under which he would allow a new business to recover lost profits. But his example resembles the exception to the *per se* rule, noted in Section 11.2(a)(i), involving franchises and other already established businesses. *Mindgames* therefore substitutes the current rule-of-evidence version of the new-business rule for the former *per se* formulation, but the practical result, factoring in the exception, appears similar.

Similarly, in *Schonfeld v. Hilliard*,[35] the court held that, although a new business may recover lost profits, evidence of such profits requires higher scrutiny by the court.

When lost profits are sought from a business with no, or limited, profit records, alternative evidence must be presented to establish whether any damages even exist, let alone the amount of damages. Such evidence calls for more tenuous inferences to reach a conclusion as to damages, and, therefore, such evidence merits greater scrutiny.[36]

In *Schonfeld*, the shareholder of a closely held cable television corporation brought a derivative suit alleging that the other shareholders breached an oral agreement to fund an interim agreement and that this breach in turn led to the corporation's loss of an exclusive cable television license. The corporation, International News Network (INN), was to create a new cable television channel in the United States devoted to distributing news and information programming of the British Broadcasting Corporation (BBC). To establish lost profits, the plaintiff relied on INN's business plan, revenue projections by Cox Cable Communications in connection with its own BBC news channel, the testimony of the BBC and the defendants that the new cable channel would generate profit, and

**11 • 8**   **VALUING LOSSES IN NEW BUSINESSES**

the expert testimony of two damages experts. One expert derived lost profits from projections contained in the INN business plan and projected profits between $112 and $269 million. The other expert opined that the new venture would have success based on comparisons with other cable channels such as CNN.

In affirming the opinion of the lower court, the Second Circuit Court of Appeals decided, however, that Schonfeld had presented an insufficient lost-profits analysis. First, the court found that Schonfeld's analysis relied on hypothetical speculation—beginning with the sale of untested programming to a hypothetical subscriber base, sold to advertisers at a hypothetical price, and supported by hypothetical carriers and investors.[37] Next, the court rejected Schonfeld's comparison between INN and other operating channels because he had not shown a "high degree of correlation" between INN and the other firms.[38] Finally, the court rejected Schonfeld's argument regarding the "wrongdoer rule." The wrongdoer rule provides that where the defendant's actions have prevented the plaintiff from establishing a sufficient record of earnings, "the burden of uncertainty as to the amount of damage is upon the wrongdoer, and the test for admissibility of the evidence concerning prospective damages is whether the evidence has any tendency to show their probable amount."[39] As discussed in Section 11.2(a)(ii), courts have adopted the current new business rule in part because denying recovery for lack of a sufficient record of earnings is unfair where the defendant's actions have prevented the plaintiff from establishing such a record. Some courts appear more likely to approve lost profits where the defendant has exhibited egregious conduct. But the *Schonfeld* court held that the rule shifts the burden to the defendant only when damages exist without question and the only uncertainty relates to the amount of damages. As the court stated, "The rule does not apply here for the simple reason that the *existence* of lost profit damages cannot be established with the requisite certainty."[40]

As suggested by the *Schonfeld* opinion, courts that use this more stringent approach will more likely find no proof of future damages at all—that the plaintiff has failed to establish the existence of future damages, let alone any particular amount. For example, in *Kids' Universe v. In2Labs*,[41] the court considered a claim of lost profits by an Internet Web site. The plaintiffs sought to establish that their Web site to sell toys online was state-of-the-art; that they would attract a large number of orders for their products through agreements with other prominent Web sites; that they had operated a retail toy store for some time and therefore had the expertise and means to deliver on these orders; that this success would attract venture capital investment; and that the timing of the venture in relation to the development of Internet commerce indicated the Web site would have become a financially successful leader in the e-commerce sale of toys.[42] The court, however, held that the plaintiffs had failed to establish that they would have made any profit:

> As substantial as the plaintiffs' evidence sounds on the surface, we conclude it does not suffice to raise a triable issue as to lost *profits*. The evidence would not allow a reasonable trier of fact to find with reasonable certainty lost net *profits* from the unlaunched Web site by a preponderance of the evidence. This is because the evidence, while *suggesting* the Web site would have been viable, is not of the type necessary to demonstrate that a triable controversy exists as *to a reasonable certainty* that the unestablished business would have made a *profit*.[43] (italics in original)

·ed lost profits from
·rofits between $112
·nture would have
as CNN.
·it Court of Appeals
·fficient lost-profits
·ed on hypothetical
·g to a hypothetical
and supported by
·chonfeld's compar-
·e had not shown a
·.[38] Finally, the court
·e." The wrongdoer
·d the plaintiff from
·ncertainty as to the
·iissibility of the evi-
·e has any tendency
·.2(a)(ii), courts have
·g recovery for lack
·t's actions have pre-
·ourts appear more
·ited egregious con-
·en to the defendant
·rtainty relates to the
·ply here for the sim-
·established with the

this more stringent
·ll—that the plaintiff
·lone any particular
·onsidered a claim of
·ablish that their Web
·tract a large number
·rominent Web sites;
·efore had the exper-
·ould attract venture
·tion to the develop-
·become a financially
·, however, held that
·le any profit:

·we conclude it does
would not allow a
·profits from the un-
·cause the evidence,
·ie type necessary to
·e certainty that the
·inal)

The court found that although the plaintiffs had five years' experience as a toy retailer and had operated a Web site for several years, their *Web site* had never produced a profit. Further, the court noted that the online toy market was a new and unestablished market. The court concluded that the plaintiffs' analysis was "rife with speculation."[44] Similarly, the court in *Tipton v. Mill Creek Gravel, Inc.* characterized the heightened scrutiny given to claims of lost profits by new businesses as a requirement of a greater burden of proof.[45] *Tipton* involved a shareholder derivative action alleging breach of an agreement that prohibited a corporation from mining gravel on the defendant's land. As in *Kids' Universe*, the *Tipton* court found that the plaintiff never proved the possibility of profit with reasonable certainty. The court questioned the plaintiff's projection of an increased demand for gravel in the area. The court held: "Projecting $14 million in lost profits upon a future demand that does not yet exist is exactly the kind of conjectural assumption that is disfavored."[46]

*(iii) Reconciling the Cases: Interpreting the Reasonable Certainty Standard.*   The previous two sections presented examples of cases in which new or unestablished businesses recovered lost profits and those in which they did not. Can we reconcile these cases, and, if so, how?

One possible answer would lie in distinguishing the two sets of cases based on their facts. But would Judge Posner, or the Second Circuit in *Schonfeld,* or the court in *Kids' Universe* have found lost profits if they faced the facts of *Cardinal* or *DSC?* We think not, which illustrates how courts differ when interpreting the new-business rule.

To understand the difference between the two sets of cases, first consider how the new-business rule fits into the general law of damages. In contract law, for example, plaintiffs must first prove the *fact* of damages. Once they have proved that some loss has occurred, the law allows them to prove the *amount* of damages with less certainty. The U.S. Supreme Court referred to these concepts when it stated: "Certainty in the fact of damages is essential. Certainty as to the amount goes no further than to require a basis for a reasoned conclusion."[47] Proving the fact of damages thus relates to causation—that the defendant's conduct in fact caused the plaintiff damage, whatever the amount. Once plaintiffs have established causation, they need only prove damages to a reasonable certainty.

The current new-business rule then establishes an evidentiary rule that creates a higher level of proof needed to achieve reasonable certainty as to the amount of damages. But mitigating against the new-business rule (potentially) is the wrongdoer rule, which holds that where the plaintiff has proved the existence of damages (or causation)—but where the defendant's actions have left the plaintiff unable to calculate damages with reasonable certainty—then "the burden of uncertainty as to the amount of damages is upon the wrongdoer, and the test for admissibility of the evidence concerning prospective damages is whether the evidence has any tendency to show their probable amount."[48]

All courts agree that a new business faces a tougher challenge relative to an established business in proving lost profits. But the courts seem to disagree whether this tougher challenge is a natural result of the fact that a new business will necessarily have less probative evidence at its disposal with which to prove damages, or whether the standard itself is actually higher for a new business

seeking lost profits. The courts in the first set of cases follow the rules for lost-profits damages literally and give due consideration to the wrongdoer rule. The courts in the second set of cases arguably place much less weight on the wrongdoer rule and require more of the plaintiff in terms of establishing that the business would earn a profit in the first instance.

The new-business rule and the wrongdoer rule therefore appear to exist in an uneasy balance. Courts can emphasize the wrongdoer rule to find damages in cases in which the defendant demonstrates egregious conduct. But courts, as with *Schonfeld*, can also circumvent the wrongdoer rule by finding that the plaintiff has failed to establish the fact or existence of damages. Courts base decisions such as *Schonfeld*, therefore, not on an application of the new-business rule, but on a narrow interpretation of the basic law of damages—that the plaintiff has not proved the fact of damages.

This varied interpretation of the new-business rule, and the general law of damages, has a further consequence. Courts employing a narrow interpretation would deny recovery of lost profits in cases in which damages are proper under accepted principles of damages analysis. A plaintiff who can show by a preponderance of the evidence that it had a 45 percent chance of earning $1 million has proved by a reasonable certainty an expectation of $450,000. Yet these courts would probably deny such a recovery because the plaintiff could not show it had a better than 50 percent chance at earning the total. In such cases, the plaintiff is undercompensated. Conversely, consider a plaintiff who can show it had a 75 percent chance of earning $1 million. The plaintiff has proved an expectation of $750,000, yet many courts would award $1 million. In such cases, the plaintiff would be overcompensated. The courts therefore may be confusing the quantum of proof necessary to prove the expectancy with the nature of the expectancy itself. Section 11.4 pursues this issue.

*(iv) Effect of Daubert: Failing to Consider Risk.*   The cases in Section 11.2(b)(ii) discussed damages analyses based on unsupported or speculative assumptions that failed to prove that the plaintiff's new business would have generated a profit but for the defendant's conduct. Implicitly, these courts found that the nature of the business at issue appeared so risky, or that the plaintiff's proof did not establish a sufficient probability of success, such that the very existence of lost profits became too speculative.

As Chapter 1 of this book discusses, courts have extended the requirements of *Daubert v. Merrell Dow Pharmaceuticals*[49] to economic damages assessments. Thus, for example, experts must consider whether damages resulted from a cause other than that claimed by the plaintiff. The court in *Schonfeld v. Hilliard*, discussed in Sections 11.2(b)(ii) and (iii), suggested that a damages expert who failed to calculate and consider the percentage risk of failure of a new business venture would not survive a challenge under *Daubert*.[50]

In responding to the defendants' argument that the plaintiff's lost-profits analysis was too speculative, Schonfeld argued that his damages expert had taken into account the risk associated with the new venture by providing for a 25 percent variance on the projected cash flows of the business. The Second Circuit disagreed:

> However, Curtis [plaintiff's damages expert] failed to establish that this variance would adequately account for any inaccuracies in the revenue and expense assumptions discussed above as well as any changes in consumer demand for British-style news reporting.

· the rules for lost-
rongdoer rule. The
ht on the wrongdo-
ig that the business

ppear to exist in an
:o find damages in
. But courts, as with
hat the plaintiff has
;e decisions such as
; rule, but on a nar-
itiff has not proved

general law of dam-
nterpretation would
pper under accepted
ireponderance of the
has proved by a rea-
iould probably deny
etter than 50 percent
undercompensated.
int chance of earning
i00, yet many courts
iercompensated. The
cessary to prove the
t pursues this issue.

iction 11.2(b)(ii) dis-
ive assumptions that
;enerated a profit but
hat the nature of the
of did not establish a
of lost profits became

l the requirements of
:s assessments. Thus,
id from a cause other
Hilliard, discussed in
t who failed to calcu-
siness venture would

iff's lost-profits analy-
expert had taken into
ding for a 25 percent
ind Circuit disagreed:

sh that this variance
ind expense assump-
nand for British-style

Indeed, Curtis failed to account for the effects of *any* general market risks on the Channel's probability of success. These risks include: (1) the entry of competitors; (2) technological developments; (3) regulatory changes; or (4) general market movements. As the district court correctly noted, "[f]ailure to control for adverse market conditions allows the false inference that plaintiff's venture was an assured success." [citation omitted] Therefore, the court properly held that Schonfeld failed to establish a foundation for the existence of lost profits.[51]

Therefore, the *Schonfeld* court dismissed the plaintiff's claim of lost profits principally because he failed to account adequately for risks relating to the new venture. Further, the lower court suggested that *Daubert* standards would probably exclude the expert's opinion, but it decided the issue on other grounds.

Courts have also considered specific estimates regarding the percentage risk of failure, or the probability of success, of a new business in pre-*Daubert* cases. For example, in *Rancho Pescado, Inc. v. Northwest Mutual Life Insurance Co.*[52] the court found persuasive evidence that the business at issue, catfish farming, had a failure rate of 95 percent.[53] On the other end of the spectrum, an early case espousing the current new-business rule found convincing evidence that the new business involved in the case, a McDonald's franchise, had an amazing record of success— not one McDonald's franchise had ever failed.[54] Specific evidence showing the probability of success or failure of a new business has great value. In this era of *Daubert* challenges, the lack of any analysis of exogenous factors may give a court reason to exclude the expert's entire testimony.

One commentator has argued that if statistical evidence of the failure of a new business does not void the plaintiff's lost profits projections, then the plaintiff could incorporate such evidence into a risk premium and add it to the discount rate applied to the estimate of damages.[55] In *Energy Capital*, discussed in Section 11.2(b)(*i*), the court confronted such an issue, framing it as follows:

Energy Capital argues that once the Court of Federal Claims determined that its profits were reasonably certain, no further consideration of risk was appropriate, because risk already had been considered in determining whether there had been profits. We disagree. A venture that is anticipated to produce $1 million in profits and that has a 95% chance of success is obviously more valuable than a venture that is anticipated to produce $1 million in profits with only a 90% chance of success— and yet, both ventures would most likely have been determined to have a reasonable certainty of producing profits. Therefore, the fact that the trial court has determined that profits were reasonably certain does not mean that risk should play no role in valuing the stream of anticipated profits. In other words, by finding that Energy Capital's lost profits were reasonably certain, the trial court determined that the probability that the AHELP venture would be successful was high enough that a determination of profits would not be unduly speculative. The determination of the amount of those profits, however, could still be affected by the level of riskiness inherent in the venture.[56]

The *Energy Capital* court remanded the case directing the trial court to calculate the present value of the damages award using a risk-adjusted discount rate.

Section 11.4 of this chapter criticizes the *Energy Capital* court's reasoning. But these cases show that a new venture can pose an inherent risk great enough to negate any claim of lost profits. The *Daubert* requirements further underscore that the plaintiff's damages expert must perform a risk analysis as part of the damages

analysis. Defense counsel can use the lack of such an analysis to defeat a lost damages claim, either on its merits or as an attack on the plaintiff's damages expert in a *Daubert* challenge. Further, even if a new business plaintiff succeeds in establishing the existence and amount of lost profits, some courts will require the plaintiff to discount this measure by a risk-premium adjusted rate.

## 11.3    OVERVIEW OF VALUING ECONOMIC LOSSES FOR A NEW BUSINESS

We began this chapter by posing a hypothetical case for a drug company developing a new drug. Variations to the hypothetical relate to the status of the company, its expertise, and the nature of the product—from an established drug company developing a new drug within its area of expertise, to an unestablished company developing a new drug for a new market, and scenarios in between. Section 11.2 of this chapter presented an overview of the current new-business rule and showed that courts differ in their interpretation of this rule. Thus, the damages expert must understand the applicable law before developing a theory of measuring economic losses.

This section presents an analytical framework for establishing lost profits in the new-business scenario, that is, given the law in a particular jurisdiction, how should the damages expert approach the issue? Using examples relating to the hypothetical drug manufacturer, we begin by defining the issues the damages expert faces. Then we examine techniques for applying the analytical framework to calculate damages. In particular, we consider sources of data, categorization and modeling of risk, and methods for estimating economic losses.

As in most damages calculations, damages are the difference in economic value to the plaintiff of the outcome absent the defendant's misconduct and the actual outcome. In most new-business cases, the new business is the plaintiff, and defendant's misconduct usually destroys any value. Thus, damages are simply the but-for value of the new business absent the misconduct.

## 11.4    THE ANALYTICAL ISSUES FOR MEASURING ECONOMIC LOSSES

As Section 11.2 explained, the plaintiff must first prove the fact of damages—that the defendant's conduct in fact caused the plaintiff damages. After the plaintiff has proved that some loss has occurred, the law allows the amount of damages to be proved with less certainty, or *reasonable certainty*. Thus, an expert should regard damages as requiring two steps: establishing the fact of loss, with the loss directly linked to the bad acts of the defendant, and calculating the extent of the damages.

These concepts apply to calculating damages for both existing businesses and new businesses. To understand how the differences between the two affect how the damages are calculated, begin by considering the example of a manufacturer of an existing drug that faces competition from a company that infringes the patent on the drug. The plaintiff's damages expert will likely forecast the continued profitability of the drug based on its historic profitability and the combined sales of the patent holder and the patent infringer and then adjust the profitability to exclude competition from the infringer. Although the defendant's expert may alter the analysis to account for other factors such as increased competition from